**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

_____

LAVELL ENTERPRISES, INC.,

                         CAUSE NO. CV-04-89-M-JCL

                  Plaintiff,

         vs.

                                    ORDER

AMERICAN CREDIT CARD PROCESSING
CORP., and DOES 1-10 inclusive,

                  Defendants.

_____

     Pending before the Court are the parties' cross motions for
summary judgment.  Also, Defendant American Credit Card
Processing Corporation has filed a Motion to Dismiss due to
Plaintiff's alleged spoliation of evidence Defendant asserts it
needed to defend this action.

     On September 10, 2007, the Court held a hearing on the
pending motions.  Having reviewed the motions, briefs,
evidentiary materials submitted in support thereof, and having
considered the parties' arguments at the hearing, the Court
hereby enters the following:

                         **ORDER**

     1.  Plaintiff's Motion for Summary Judgment is **GRANTED** on
its conversion claim.  It is entitled to damages in the amount of
$265,141.22, plus interest.  The amount of the interest, and
Plaintiff's potential entitlement to additional compensatory

ORDER/ Page 1

damages on its conversion claim will have to be determined in subsequent proceedings in this matter.  Plaintiff is not, however, entitled to an award of its attorney's fees on its conversion claim.  Plaintiff's motion is also **GRANTED** on Defendant's breach of contract counterclaim, and that claim is **DISMISSED.**  Plaintiff's motion is **DENIED** in all further respects.

2.  Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claim of unjust enrichment, and that claim is **DISMISSED.**  Defendant's motion is **DENIED** in all further respects.

3.  Defendant's Motion to Dismiss Lawsuit for Spoliation of Evidence is **DENIED.**

DATED this 11th day of December, 2007.


_/s/ Jeremiah C. Lynch_
Jeremiah C. Lynch
United States Magistrate Judge


## **ANALYSIS**

### **I.  Background**

Plaintiff, Lavell Enterprises Inc. ("Lavell"), is engaged in the business of soliciting and effecting the sale of magazines, periodicals, and other publications.[1]  The Defendant, American Credit Card Processing Corporation ("ACCP") is an entity which provides retail merchants the services necessary to process

---

[1] Lavell was actually a billing agent for a related company called Your Magazine Provider, Inc., which was the entity selling magazines, etc., through telemarketing.

ORDER/ Page 2

credit card transactions.  A third-party processor like ACCP essentially provides a retail merchant access to the networks of various credit card companies such as Visa/Mastercard.  For a fee, the processor undertakes to process the credit card transactions so that ultimately the merchant receives payment from the consumer's credit card company.  The processor settles each transaction with the credit card company, who makes payment to the processor through the Federal Reserve Bank Automated Clearinghouse.  The processor, in turn, deposits the payments, less the processor's fees, into the merchant's account at established payment intervals.

On January 14, 2003, Lavell and ACCP, through their authorized representatives, executed a document entitled "Merchant Processing Agreement Application and Fee Schedule." The parties agree the document was a contract whereby ACCP agreed to provide credit card processing services to Lavell in exchange for an agreed upon fee.  As detailed more fully below, however, the parties do not agree upon the precise terms of the contract. Lavell contends the executed document consisted of only four (4) pages with no attachments.  ACCP, on the other hand, asserts the contract incorporated by reference an attached two (2) page document entitled "Merchant Processing Agreement Terms and Conditions" ("Processing Agreement").

Commencing in January 2003, and continuing through November 2003, ACCP processed numerous credit card transactions for

Lavell.  Sometime in July 2003, however, ACCP ceased depositing any sales proceeds into Lavell's account, and continues to withhold all proceeds from transactions it processed for Lavell from approximately July 21, 2003, through November 2003.

By way of this action, Lavell seeks to recover $265,141 in sales proceeds it contends ACCP has illegally retained, together with prejudgment interest.[2]  Lavell also seeks to recover other compensatory damages it allegedly sustained as a result of ACCP's conduct, together with punitive damages.  Lavell advances claims against ACCP for conversion, unjust enrichment, and intentional interference with prospective economic advantage.

In defense, ACCP takes the position it initially held, and continues to retain the sales proceeds in accordance with the terms of the Processing Agreement.  According to ACCP, the Processing Agreement provided that if a material variance occurred in the nature of Lavell's business, such as a significant increase in monthly volume of sales or size of sales, ACCP had the right to demand that Lavell verify the underlying credit card transactions were authorized, and the products purportedly purchased were actually delivered, received, and accepted by the customers.  ACCP asserts that the Processing Agreement also granted it the right to indefinitely withhold sales proceeds until Lavell provided verification of sales

---

[2] ACCP disputes the precise amount of the withheld proceeds, but acknowledges that the amount is in the neighborhood of $200,000.

satisfactory to ACCP.

ACCP states that it withheld the funds based upon what it perceived as suspicious sales activity by Lavell. The "suspicious" activity included (1) a dramatic increase in the volume and average ticket size of Lavell's sales over what Lavell had represented it expected its volume of sales to be; and (2) an increase in the number of charge-backs wherein customers disputed certain sales transaction charges. As a result of the allegedly suspicious sales activity, ACCP withheld the sale proceeds and stopped making deposits into Lavell's account. At the same time, however, ACCP inexplicably continued to process Lavell's sales transactions.

By way of counterclaim, ACCP asserts Lavell's failure to provide the verification demanded by ACCP constitutes a breach of contract. ACCP seeks indemnification from Lavell for any damages it may incur as a result of any wrongful sales activity by Lavell.

Lavell moves for summary judgment on its claim of conversion and unjust enrichment. It has also moved for summary judgment upon ACCP's counterclaim for breach of contract, contending there is no enforceable contract between the parties on the terms alleged by ACCP.

ACCP moves for summary judgment seeking dismissal of all of the claims advanced in the complaint. ACCP also moves, in the alternative, for summary judgment on Lavell's claim for punitive

damages.

## II.  Discussion

### A.  Standard of Review

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).  Once the moving party has satisfied his burden, he is entitled to summary judgment if the non-moving party fails to designate by affidavits, depositions, answers to interrogatories of admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Cattrett*, 477 U.S.  317, 324 (1986).  To establish its entitlement to summary judgment "as a matter of law," Lavell, as the party with the burden of persuasion at trial, must establish "beyond controversy of every essential element of its" various claims for relief.  *Southern Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).  Conversely, ACCP, as defendant, would be entitled to judgment "as a matter of law" only if Lavell has failed to make an adequate showing, under Rule 56, on an essential element of each particular claim for relief.  *Harris v. Harris and Hart*

ORDER/ Page 6

*Inc.*, 206 F.3d 838, 841 (9th Cir. 2000)(*citing Celotex Corp.*, 477 U.S. at 322)).   The parties' roles are, of course, reversed with respect to ACCP's motion for summary judgment upon its counterclaim.

Jurisdiction is founded upon diversity of citizenship. 28 U.S.C. § 1332(a).   Therefore, the substantive law of Montana, the forum state, controls.   *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies*, 306 F.3d 806, 812 (9th Cir. 2002).

### B.  Contractual Terms

The parties agree they signed an agreement in January 2003, but they dispute the specific terms of the agreement.   Lavell concedes that one of its principals, Louis Lavergne, signed a "Merchant Processing Agreement Application and Fee Schedule" with ACCP which consisted of only four pages.[3]   ACCP, however, contends that in addition to the four pages identified by Lavell, the agreement included the Processing Agreement consisting of two additional pages, the terms of which  were incorporated by reference into the Agreement Application.

Lavell adamantly disputes that it agreed to the terms of the Processing Agreement, contending that when Lavergne signed the Agreement Application the two additional pages of terms and conditions were not attached.   Lavergne testified in deposition

---

[3] Louis Lavergne and Jason Ellsworth each own fifty percent of Lavell.

ORDER/ Page 7

that he did not remember receiving a copy of the two additional pages of terms and conditions at the time he signed the Agreement Application.  Lavergne testified that the first time he saw the additional two pages of terms and conditions was in his attorney's office after this litigation was commenced.

ACCP's entire defense to Lavell's claims is predicated upon its contention the Processing Agreement was a part of the contract and that the terms of the Processing Agreement entitled ACCP to initially withhold, and continue to retain, the funds at issue.  In other words, ACCP's position rises or falls on the interpretation to be afforded the terms of the Processing Agreement.  For purposes of resolving the parties' motions for summary judgment, the Court assumes that the two pages of the Processing Agreement were part of the parties' contractual agreement.  Contrary to ACCP's position, however, the Processing Agreement did not grant ACCP the right to indefinitely retain the sales proceeds.

ACCP acknowledges that its defense is based upon the construction to be afforded the language of the Processing Agreement, which is a question of law for the Court to resolve. *See Mularoni v. Bing*, 2001 MT 215, ¶ 15, 306 Mont. 405, ¶ 32, 34 P.3d 497, ¶ 32.  "If the language of a contract is unambiguous - i.e., reasonably susceptible to only one construction - the duty of the court is to apply the language as written."  *Mary J. Baker Revocable Trust v. Cenex Harvest States Cooperatives Inc.*, 2007

MT 159, ¶ 19, 338 Mont. 41, ¶ 19, 164 P.3d 851, ¶ 19.  "The duty of the Court is simply to apply the language as written to the facts of the case, and decide the case accordingly." *Nordlund v. School Dist. No. 14*, 227 Mont. 402, 405, 738 P.2d 1299, 1301 (1987).  The Court may not change the contract or disregard its express language.  *Id. See also*, *Hardy v. Vision Service Plan*, 2005 MT 232, ¶ 16, 328 Mont. 385, ¶ 16, 120 P.3d 402, ¶ 16 (stating that the court must "interpret the language of contractual provisions according to their plain, ordinary meaning").

ACCP bases its defense upon the language set forth in paragraph twelve of the Processing Agreement, which provides as follows:

> Change in Merchant's Business.  Merchant acknowledges and agrees that member may hold funds: Temporarily suspend processing under the Agreement or terminate this Agreement if there exist <u>material variances</u> in the nature of Merchant's business, type of or composition of bank card processing, <u>actual average ticket size of actual monthly volume amounts from such amounts represented or disclosures made by merchant on the Merchant Application</u>.  <u>If such variances exist</u>, Merchant does not swipe credit card through POS terminals, <u>Merchant does not receive authorization for transactions</u>, Member receives excessive retrieval requests against Merchant's prior activity, or excessive Chargebacks are debited against merchant's prior activity, <u>Member may delay or withhold settlement of funds for a period not less than 180 days or until Member is reasonable [sic] certain fraud or other activity detrimental to Member has not occurred.</u>  Merchant should immediately contact Member if material variances from the average ticket size or monthly volume occur.  For purposes hereof, Member determination of materiality shall be binding upon Merchant [emphasis added].

ACCP contends that because there were "material variances"

in Lavell's business, i.e. increased monthly volume and average ticket size, and chargebacks, ACCP was authorized to withhold funds indefinitely.[4]

The parties agree that paragraph twelve permitted ACCP to hold funds from Lavell's sales transactions under certain circumstances. As the language establishes, funds could properly have been withheld if, inter alia: (1) there existed a material variance in the "actual average ticket size"; (2) a material variance existed in the "actual monthly volume amounts from such amounts represented or disclosures made by [Lavell] on the Merchant Application;" (3) "Merchant does not receive authorization for transactions;" (4) "Excessive Chargebacks are debited against [Lavell's] prior activity."[5] In the event any of these referenced contingencies occurred, paragraph twelve provided ACCP the following recourse:

> [ACCP] may delay or withhold settlement of funds for a
> period not less than 180 days or until Member [ACCP] is
> reasonable [sic] certain fraud or other activity detrimental

---

[4] In fact, ACCP goes one step further and states that the material variances provided ACCP "with the authority to withhold the funds and return them to the cardholders, so as to prevent a fraud upon the public." Defs.' Br. in Support of Mot. for S.J., Doc. # 39, pp. 4-5. ACCP fails to explain how the language of paragraph twelve would support this proposition.

[5] The Court notes that the word "of" appears between the phrases "actual average ticket size" and "actual monthly volume." It appears "or" should have separated these phrases. The arguments presented by the parties confirm this fact, as both discuss the two phrases in the disjunctive.

to Member [ACCP] has not occurred.[6]

Paragraph twelve does not set forth an express limit on the time ACCP could withhold funds.  At the same time, paragraph twelve certainly does not provide ACCP the authority to withhold funds indefinitely.  Consequently, resolution of the parties' respective positions requires the Court to proceed to determine what conditions or circumstances would operate to allow ACCP to continue holding the disputed funds beyond the minimum 180 day period prescribed in paragraph twelve.[7]  ACCP contends that based on the language of paragraph twelve it has unfettered discretion to determine how long it may hold funds to protect itself from fraud or other untoward sales activity.  The plain language of paragraph twelve, however, only permits ACCP to withhold funds for a period of time that would allow ACCP to be "reasonably certain" that fraud or other activity detrimental to ACCP has not occurred.

In commercial contractual relationships, the standard of reasonableness under a clause requiring reasonableness is governed by principles of equity, fair dealing, and commercial reasonableness.  *See Erban v. Monforton,* 227 Mont. 531, 533, 740

---

[6] It must be noted that the term "Member" as used in paragraph twelve is not clearly identified in the Merchant Processing Agreement Terms and Conditions as ACCP.  Throughout its pleadings, ACCP implicitly claims to be the "Member" and Lavell does not dispute this point.

[7] ACCP concedes it has no right of ownership to the withheld funds.

P.2d 677, 679 (1987); *Brigham Young University v. Seman*, 206
Mont. 440, 446, 672 P.2d 15, 18 (1983).  The standard of conduct
is that of a "reasonably prudent person in the [party's] position
exercising reasonable commercial responsibility." *Brigham Young
University*, 206 Mont. at 447, 672 P.2d at 18.  A party who is
required to act reasonably cannot act based on arbitrary
considerations. *Id.*  A party must either demonstrate it acted
reasonably based on reasons of sound business judgment, or it
must clearly explain its justification for its conduct. *Erban*,
227 Mont. at 533, 740 P.2d at 679.

In order for ACCP to sustain its assertion that it is not
reasonably certain that other detrimental activity has not
occurred, ACCP must demonstrate it is acting on reasons of sound
business judgment, or it must clearly explain its justification
for its conduct.  ACCP, however, has presented no facts which
demonstrate that it has acted reasonably under the circumstances.
ACCP has not presented any evidence whatsoever to raise a genuine
issue of material fact suggesting fraud or other detrimental
activity has occurred.  At oral argument, counsel for ACCP
conceded there exists no evidence Lavell engaged in any
fraudulent activity and that there have been no claims from
customers or chargebacks to customers since November 2003.
Likewise, there exists no evidence that either Lavell or ACCP has
been made the subject of, or threatened with, any civil
litigation or regulatory proceedings.  There simply exists no

ORDER/ Page 12

factual basis for ACCP to continue to assert that it is not reasonably certain fraud or other activity detrimental to ACCP has not occurred.  ACCP's extended and continuing withholding of the funds is not commercially reasonable.

ACCP has sought to justify its withholding of the funds by contending that Lavell has failed to produce verification in breach of paragraph twelve.  Contrary to ACCP's contention, the language of paragraph twelve does not contractually obligate Lavell to produce verification and proof of its sales to ACCP. Rather, the language merely permits ACCP to withhold funds if "Merchant [Lavell] does not receive authorizations for transactions[.]" This provision cannot be construed to permit ACCP to continue to withhold funds if ACCP does not receive authorization for transactions.  Therefore, the Court concludes as a matter of law that Lavell was not contractually obligated to produce verifications and proof to ACCP.

Similarly, ACCP contends its conduct was justified because of Lavell's purported representations that Lavell was the actual "Merchant" for which ACCP would process transactions.  There is simply no provision in paragraph twelve of the Processing Agreement that entitled ACCP to withhold the funds indefinitely based on this purported misrepresentation.  The Court finds, and counsel for ACCP conceded at oral argument, that the identity of the actual merchant is not relevant to the issue of whether fraud or other untoward sales activity has occurred.  Consequently,

this purported misrepresentation as to the identity of the "Merchant" did not contractually permit ACCP to indefinitely withhold the funds.

The correlative issue to be addressed is what time frame would be a reasonable length of time to withhold the funds. Lavell argues that (Title 15 U.S.C. Ch. 41) informs the answer. Pursuant to the Act, if a cardholder finds a billing error on a credit card statement, the cardholder must submit a notice of the error to the creditor within sixty (60) days after the creditor transmits the credit card statement to the cardholder.  15 U.S.C. § 1666(a).  The creditor must then resolve the billing error within ninety (90) days after receipt of the notice from the cardholder.  *Id.*  Accordingly, the Act establishes a time frame for resolution of a "billing error" in a credit card transaction. If a creditor complies with the provisions of the Act with respect to an alleged billing error, the creditor has no further responsibility under the Act if the cardholder continues to make "substantially the same allegation" with respect to the alleged error." *Id.*  If a creditor does not receive notice of a billing error from a cardholder, then it is permitted to file an action against the cardholder to collect the amounts due on a credit card statement.  15 U.S.C. § 1666(c).

The time frame established by 15 U.S.C. § 1666 would suggest that it would be reasonable for a processor like ACCP to withhold sale proceeds from a credit card transaction for 150 days after a

ORDER/ Page 14

creditor transmits a credit card statement to a cardholder.  In
fact, a creditor may collect the charge from the cardholder if
the cardholder does not challenge the charge within 60 days after
the creditor transmits the credit card statement to the
cardholder.  The time frames established by 15 U.S.C. § 1666
would be indicative of what would have been a commercially
reasonable time for ACCP to withhold funds from Lavell for what
it perceived to be material variances in Lavell's sales activity.
It appears evident that the Processing Agreement itself was
drafted with this time frame in mind by including the minimal 180
day period for withholding settlement of funds if material
variances occurred.  ACCP was not justified in holding the funds
beyond the 180 day period without the existence of a legitimate
factual basis to support the conclusion that ACCP could suffer
detriment from untoward sales activity.  As noted, ACCP has
presented no evidence to this effect and concedes that the last
chargeback from a customer occurred in November 2003.

ACCP's defensive position, which relies on its
interpretation of the Processing Agreement, fails.  ACCP was not
contractually entitled to indefinitely withhold the funds.

### C. Conversion

Lavell contends that the conduct of ACCP constituted a
conversion of the withheld sales proceeds.  As discussed, ACCP
had no right, contractually or otherwise, to withhold the sales
proceeds indefinitely.  Under the circumstances, ACCP's

unauthorized retention of the sales proceeds constituted a conversion.

Although a contract, at least in some form, existed between the parties, Lavell has not asserted a claim for breach of contract.  Instead, Lavell has elected a claim of conversion.  Under Montana law, a ground of liability in tort may exist even if the factual circumstances arise out of a breach of contract "if a defaulting party, by breaching the contract, also breaches a duty which he owes to the other party independently of the contract [...] and which duty would exist even if no contract existed."  *Boise Cascade Corp. v. First Security Bank of Anaconda*, 183 Mont. 378, 392, 600 P.2d 173, 181-82 (1979) (*quoting First Security Bank of Bozeman v. Bankers Union Life Ins. Co.*, 181 Mont. 407, 419, 593 P.2d 1040, 1047 (1979).  Where liability in tort and contract coexist, the injured party has the right to elect which form of action to pursue.  *See Garden City Floral Co. v. Hunt*, 126 Mont. 537, 544, 255 P.2d 352, 356 (1953).

Lavell's claim for conversion asserts a duty, i.e. the duty not to exert improper dominion over the property of another, independent of the parties' contract.  *See Marvin v. Hargrave*, 190 Mont. 59, 61, 618 P.2d 339, 340 (1980) (recognizing a valid conversion claim based on an obligation which existed independent of the parties' contract).

The elements of a tort claim for conversion are as follows:

A claim for conversion must satisfy the following elements:

ORDER/ Page 16

ownership of property, a right of possession, unauthorized
dominion over that property by another, and resulting
damages.

*Trifad Entertainment, Inc. v. Anderson*, 2001 MT 227, ¶ 38,
306 Mont. 499, ¶ 38, 36 P.3d 363, ¶ 38.

Addressing the element of unauthorized dominion first, the
Court finds ACCP did not have authority to exercise dominion over
the funds for the length of time it did in this case.  For the
reasons previously discussed, ACCP did not have a contractual
right to indefinitely exercise dominion over the funds withheld
from Lavell.  Lavell has established that no genuine issue of
material fact exists with regard to its ownership and right to
possess the sales proceeds which have been withheld by ACCP.
ACCP does not materially dispute Lavell's ownership of, and right
to possess, the funds ACCP has withheld.  The parties agree that
the funds ACCP withheld from Lavell are proceeds from sales of
magazines and periodicals Lavell was billing for a magazine
provider.

With respect to damages for the tort of conversion, Mont.
Code Ann. § 27-2-320 provides:

> (1) the detriment caused by the wrongful conversion of
> personal property is presumed to be:
>> (a) the value of the property at the time of its
>> conversion with the interest from that time.

The statute creates a presumption as to what constitutes damages,
not a presumption as to the amount of damages.  Lavell must
provide sufficient evidence to prove "the value of the property"

converted.  To sustain its burden, Lavell has submitted the
following evidence: (1) merchant reports which Lavell claims
establishes ACCP withheld $265,141; and (2) the deposition
testimony of Jason Ellsworth detailing the amount of sales
proceeds ACCP withheld from Lavell from July through November of
2003.[8]

The Court finds Ellsworth's deposition testimony admissible
and sufficient to establish the amount of damages in this summary
judgment proceeding.  ACCP has not raised a genuine issue of
material fact as to the amount of the money it withheld from
Lavell.  In fact, counsel for ACCP conceded at oral argument that
ACCP withheld funds in the neighborhood of $200,000.  ACCP has
not submitted evidence to rebut the $265,141 figure established
by Lavell.

Lavell also requests the Court to award it prejudgment
interest on the claim of conversion.  Prejudgment interest in
diversity cases is a question of state law.  *Fidelity Federal
Bank, FSB v. Durga Ma Corp.*, 387 F.3d. 1021, 1024 (9th Cir.
2004).  In the case of the conversion of personal property, a
plaintiff who elects to accept the value of the property at the
time of the conversion is entitled to interest on the value of
that property from the date of conversion.  Mont. Code Ann. § 27-

---

[8] Lavell's  Statement  of  Uncontroverted  Facts,  Exh.  A;
Deposition of Jason Wendell Ellsworth (June 19, 2007), Exh. 12, p.
111.

1-320.  Because § 27-1-320 does not fix the rate of interest, the rate is controlled by Mont. Code Ann. § 27-1-210, which sets the prejudgment interest rate at 10% per annum.

While Lavell is entitled to prejudgment interest, it has not submitted sufficiently specific evidence from which the Court can legitimately determine the date from which interest shall be calculated with respect to the amounts comprising the withheld funds.  Therefore, while Lavell's motion for summary judgment on the matter of prejudgment interest is properly granted, the amount of the interest due Lavell shall be determined in subsequent proceedings.

Lavell also claims entitlement to an award of attorney fees. Lavell predicates its request for attorney fees upon the language of Mont. Code Ann. § 27-1-320(1)(b), which provides that in an action for conversion of personal property, the injured party is entitled to "fair compensation for the time and money properly expended in pursuit of the property."  Lavell's argument that § 27-1-320(1)(b), contemplates an award of attorneys fees has been expressly rejected by the Montana Supreme Court.  *Kenney v. Koch*, 227 Mont. 155, 165, 737 P.2d 491, 497-98 (1987).  While the statute contemplates an award of "costs," it does not contemplate attorneys fees.  *Id.*  Therefore, Lavell is entitled to recover its costs, but not its attorneys fees.  Again, the amount of costs Lavell is entitled to recover shall be determined in subsequent proceedings.

Finally, Lavell also seeks to recover additional compensatory damages.  The issue of whether Lavell is entitled to recover additional compensatory damages necessarily presents a genuine issue of material fact to be resolved at trial.

### D.  Unjust Enrichment

As an alternate theory of recovery, Lavell advances a claim of unjust enrichment.  The theory of unjust enrichment or quasi-contract is an equitable remedy that is available only when no contract exists between the parties.  *Maxted v. Barrett*, 198 Mont. 81, 87, 643 P.2d 1161, 1164 (1982).  Here, there was a contract between the parties which, at a minimum, required ACCP to process Lavell's sale transactions and accomplish settlement with Lavell.  Consequently, Lavell may not seek recovery under the theory of unjust enrichment.  ACCP is entitled to summary judgment, as a matter of law, upon this alternate theory of recovery.

### E.  Intentional Interference With Prospective Economic Advantage

Lavell asserts, as an alternate theory of recovery, a claim for intentional interference with prospective economic advantage. To prevail upon this claim, Lavell would be required to prove that ACCP's withholding of the funds was: (1) intentional and willful; (2) calculated to cause damage to Lavell's business; (3) done with the unlawful purpose of causing damage or loss to Lavell, without right or justifiable cause; and (4) resulted in

Lavell suffering actual damages.  *Pospisil v. First National Bank of Lewistown*, 2001 MT 286, ¶ 13, 307 Mont. 392, ¶ 13, 37 P.3d 704, ¶ 13.

ACCP claims it is entitled to summary judgment on the claim of intentional interference because Lavell cannot prove the essential element that ACCP acted "without right or justifiable cause or with an unlawful purpose."  ACCP does not present any affirmative evidence in support of its argument, but merely states in briefing that its motivation in withholding funds was to protect consumers from possible fraudulent conduct, and that it acted pursuant to the right it perceived was granted to it by the language of the Processing Agreement.

The Court has rejected ACCP's position that the terms of the Processing Agreement granted it the right to indefinitely withhold the funds.  Accordingly, ACCP has not sustained its initial burden in establishing that no genuine issue as to a material fact exists and that it is entitled to judgment as a matter of law upon Lavell's claim for intentional interference. ACCP's statement, through counsel in briefing, that ACCP was motivated by a desire to protect consumers from potential fraudulent activity is insufficient to sustain its initial burden under Federal Rule of Civil Procedure 56.

It is true, as noted by ACCP, that Lavell presented very limited argument in response to ACCP's motion for summary judgment upon the claim of intentional interference and did not

present any evidence of any prospective business relationship which was disrupted by ACCP's conduct. However, Lavell was not required to come forward with such evidence in light of ACCP's failure to satisfy its initial burden on summary judgment.

At trial, Lavell would obviously be required to present sufficient evidence regarding its intentional interference claim to warrant submission of that claim to a jury. Specifically, Lavell would be required to present evidence that the conduct of ACCP disrupted a prospective economic business relationship of Lavell.

Under Montana law, the tort of "intentional interference with prospective economic advantage" and a claim of "tortious or intentional interference with contractual relations" require the identical elements to establish a prima facie case under either theory. *Mahoney v. Home and Investment Center, Inc.*, 2000 MT 34, ¶ 41, 298 Mont. 213, ¶ 41, 994 P.2d 1124, ¶ 41 (2000).

> The key difference between the two tort theories is that unlike interference with contractual relations, intentional interference with either "business relations" or "prospective economic advantage" does not require that a contact exist between any of the involved parties. Rather, the focus of the legal inquiry is on the intentional acts of the "malicious interloper" in disrupting a business relationship.
>
> *Id.* at ¶ 42.

Thus, in the absence of an existing contract between any party involved, intentional interference with a plaintiff's pursuit of "reasonable and legitimate prospects of entering" a business

relationship with a third party, or a plaintiff's "reasonable expectation of entering into a valid business relationship." *Id.* (quotation omitted); *see also Cook v. Winfrey*, 141 F.3d 332, 327 (7th Cir. 1998). While it remains to be seen whether Lavell can satisfy its burden upon its claim of intentional interference, ACCP has not established that it is entitled to dismissal of the claim as a matter of law.

### F.   Punitive Damages

ACCP moves for summary judgment on Lavell's claim for punitive damages upon two alternate bases. First, ACCP argues punitive damages are barred because the action arises out of contract. Second, ACCP argues Lavell cannot present sufficient evidence indicating ACCP engaged in actual malice or actual fraud in support of its claim for punitive damages.

Under Montana law, punitive damages cannot be recovered in an action arising from contract or breach of contract. Mont. Code Ann. § 27-1-220(2)(a). Despite the foregoing proscription, however, a party may recover punitive damages if the party can establish a defendant committed a tort with actual fraud or malice. *Weter v. Archambault*, 2002 MT 336, ¶ 40, 313 Mont. 284, ¶ 40, 61 P.3d 771, ¶ 40; *Lane v. Dunkle,* 231 Mont. 365, 370, 753 P.2d 321, 324 (1988) (upholding punitive damages on conversion claim despite the existence of a contract between the parties). Consequently, if a plaintiff can establish a traditional contract related tort, such as fraud, fraudulent inducement, or tortious

interference with a contract, then the plaintiff may seek punitive damages for conduct arising out of the tort separate and distinct from breach of contract. *Grenfell v. Anderson*, 2002 MT 225, ¶ 80, 311 Mont. 385, ¶ 80, 56 P.3d 326, ¶ 80. Because Lavell has presented and established a claim for conversion independent of the parties' contract, it may seek punitive damages in this case. In order to sustain a claim for punitive damages, the plaintiff must establish by clear and convincing evidence that the defendant is "guilty" of actual fraud or actual malice. Mont. Code Ann. § 27-1-221(1) and (5).

In moving for summary judgment upon Lavell's claim for punitive damages, ACCP has not presented any affirmative evidence in support of its motion. Instead, ACCP again relies upon its interpretation of the language of the Processing Agreement that its conduct in withholding the disputed funds was not done with actual malice or fraud but under authority of the terms of the Processing Agreement. For the reasons previously discussed, the Court has rejected ACCP's argument that it is entitled to summary judgment, as a matter of law, based upon the language of the Processing Agreement. Accordingly, ACCP's motion for summary judgment on the issue of punitive damages is properly denied.

Additionally, in response to ACCP's motion, Lavell claims that ACCP acted maliciously by withholding the funds for over four years. In support of its position, Lavell relies upon the testimony of Jason Ellsworth to the effect that ACCP had no legal

right or justification to withhold the funds and that ACCP's conversion of the funds had a significant impact on Lavell and prevented it from expanding its business.[9] The testimony of Ellsworth at least raises genuine issues of material fact for a jury to consider in determining whether ACCP acted with actual malice within the meaning of Mont. Code Ann. § 27-1-221(2).  *See Cooper v. Rosston*, 232 Mont. 186, 193, 756 P.2d 1125 1129 (1988)(finding sufficient facts in support of liability for punitive damages to raise questions of fact to be resolved by the trier of fact).

**G.    ACCP's Motion to Dismiss Lawsuit for Spoliation of Evidence**

ACCP has moved the Court, pursuant to Federal Rule of Civil Procedure 37, to dismiss this case on the grounds that Lavell destroyed evidence critical to ACCP's defense.  Specifically, ACCP contends Lavell and its sister entity, Your Magazine Provider, destroyed or otherwise failed to preserve documentary evidence relating to the sales which generated the proceeds constituting the funds ACCP has withheld.  ACCP argues the documentary evidence is necessary to verify the underlying sales were authorized and legitimate.

Lavell does not dispute that it or Your Magazine Provider

_____

[9]  Ellsworth also testified that the conduct of ACCP purportedly harmed Ellsworth, Louis Laverne, and their families. The Court notes that the only plaintiff in this case is Lavell, a corporate entity.  The individual shareholders of that corporate entity and their families may not claim damages in this action.

destroyed documents or records relating to the underlying sales. The Court finds, however, that the destruction of documentation relating to the underlying sales does not support a finding of spoliation.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire and Rubber Co.*, 167 F.3d 776, 779 (2nd Cir. 1999). When spoliation occurs, courts have "the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). To support a finding that spoliation occurred, the evidence destroyed must be relevant or "material evidence." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 592 (4th Cir. 2001). Absent a finding that the destroyed evidence was relevant or material, a sanction for spoliation cannot be imposed. *See, Bolan v. Smiley*, CV-50-184-M-DWM, August 27, 2007, Order at 5-6 (District of Montana 2007). Sanctions for spoliation are appropriate only for conduct that disrupts judicial processes, *Sylvestri*, 271 F.3d at 590, or to prevent a party from benefitting from its wrongdoing. *West,* 167 F.3d at 779.

As previously discussed, the Court has found the Processing Agreement, even if it were part of the parties' contract, did not obligate Lavell to produce verification of sales to ACCP.

ORDER/ Page 26

Therefore, the documents are not relevant or material to the issues.  Moreover, ACCP has not presented any evidence whatsoever which raises a genuine issue of material fact suggesting Lavell engaged in any untoward sales activity, even though the sales at issue occurred over four years ago.  ACCP's motion to dismiss as a sanction under Federal Rule of Civil Procedure 37 is properly denied.[10]

### III.  Conclusion

ACCP had no legal authority for indefinitely withholding the proceeds generated from the sales accomplished by Lavell. ACCP's unjustifiable withholding of those funds constituted a conversion.  Lavell is entitled to a return of the funds together with an award of prejudgment interest and costs, to be determined in subsequent proceedings.  There remains for trial the issue of whether Lavell is entitled to recover any additional compensatory damages and punitive damages.

---

[10] The Court's denial of ACCP's motion does not mean ACCP is precluded from offering its explanation for withholding the funds in defense to Lavell's claim for punitive damages.